Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio de Utuado<br>    Demandante-Recurrido<br><br><br>        v.<br><br><br>Aireko Construction Corp.,<br>Autoridad de Edificios Públicos<br>del Estado Libre Asociado<br>de Puerto Rico<br>    Demandados-Peticionarios | Certiorari<br><br>2009 TSPR 150<br><br>177 DPR ____ |

Número del Caso: AC-2008-44
          Cons. CC-2008-649


Fecha: 11 de septiembre de 2009


Tribunal de Apelaciones:

        Región Judicial de Utuado

Juez Ponente:
        Panel integrado por su presidenta, la Jueza Pesante Martínez, el Juez Escribano Medina y la Jue  za Hernández Torres


Abogados de la Parte Peticionaria:

        Lcdo. Jorge Lora Longoria
        Lcdo. Juan C. Ortiz Arocho
        Lcdo. Fernando E. Agrait


Abogado de la Parte Recurrida:

        Lcdo. Domingo Donate Pérez


Materia:   Resolución (Nunc Pro Tunc)


Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correccione  s del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónic  a se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Utuado

    Demandante Recurrido

          v.                         AC-2008-44

Aireko Construciton Corp.,   Cons. CC-2008-649
Autoridad de Edificios
Públicos del Estado Libre
Asociado de Puerto Rico

    Demandados Peticionarios

**RESOLUCION**
**(Nunc Pro Tunc)**

San Juan, Puerto Rico, a 2 de octubre de 2009.

Se enmienda *nunc pro tunc* nuestra Opinión del 11 de septiembre de 2009, **que lee** en las páginas 16 y 17 de la forma siguiente:

Cónsono con lo anterior, si la actividad económica que genera la obligación del pago, en este caso la construcción de la escuela, continúa, pero se cambia el contratista que la construye, no procede la imposición otra vez del pago por concepto de arbitrios de construcción sobre la misma obra. Lo anterior está sujeto a que, como en este caso, los arbitrios de construcción no hayan sido devueltos al primer contratista.

L.P.C., como primer contratista, pagó los arbitrios de construcción correspondientes a la escuela y comenzó su construcción. Posteriormente, la A.E.P., como dueña de la obra, canceló el contrato con L.P.C. y decidió continuar la construcción con otro contratista. A esos efectos, la A.E.P. le solicitó al Municipio que le reconociera al nuevo contratista el pago de los arbitrios de construcción efectuado por L.P.C. Es importante destacar que L.P.C. no solicitó el reintegro del cincuenta por ciento (50%) de los arbitrios de construcción que había pagado, a pesar

de estar facultada a ello. Así las cosas, Aireko se convirtió en el segundo contratista de la obra y reclamó que se le acreditaran los arbitrios de construcción que había pagado L.P.C. por la misma obra de construcción. No obstante, el Municipio se negó, por entender que el arbitrio de construcción recae sobre el contratista y no sobre la obra.

**Para que lea como sigue en las Páginas 16 y 17:**

Cónsono con lo anterior, si la actividad económica que genera la obligación del pago, en este caso la construcción de la escuela, continúa pero se cambia el contratista que la construye, no procede la imposición otra vez del pago por concepto de arbitrios de construcción sobre la misma obra.

L.P.C., como primer contratista, pagó los arbitrios de construcción correspondientes a la escuela y comenzó el proyecto. Posteriormente, la A.E.P., como dueña de la obra, canceló el contrato con L.P.C. y decidió continuar la construcción con otro contratista. A esos efectos, la A.E.P. y Aireko, segundo contratista, le solicitaron al Municipio que le reconociera al nuevo contratista el pago de los arbitrios de construcción efectuado por L.P.C. No obstante, el Municipio se negó, por entender que el arbitrio de construcción recae sobre el contratista y no sobre la obra.

Se acompaña la Opinión con el texto correcto para que sea notificada nuevamente conjuntamente con la presente. El original deberá permanecer en el expediente.

Publíquese.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina.


Juliana Mosquera Soler
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Utuado

    Demandante Recurrido

        v.

                       AC-2008-44
Aireko Construction Corp.,     Cons.CC-2008-649
Autoridad de Edificios
Públicos del Estado Libre
Asociado de Puerto Rico

    Demandados Peticionarios

Opinión del Tribunal emitida por el Juez Asociado SEÑOR RIVERA RÉREZ.

San Juan, Puerto Rico, a 11 de septiembre de 2009.

Comparecen ante nos, la Autoridad de Edificios Públicos, y Aireko Construction Corp., en recursos separados, solicitando la revisión de la Resolución emitida por el Tribunal de Apelaciones la cual revocó la sentencia dictada por el Tribunal de Primera Instancia en el caso de epígrafe. Ello por entender que el arbitrio municipal de construcción recae sobre la obra y no sobre el contratista.[1]

---

[1] El 12 de diciembre de 2008, ordenamos la consolidación del recurso de Apelación número AC-2008-64 presentado por la A.E.P., con el recurso de *Certiorari* número CC-2008-648 presentado por Aireko Construction, Corp., debido a que ambos recursos versan sobre los mismos hechos y pretenden la revisión de la misma resolución.

I

El 20 de septiembre de 2000, la Autoridad de Edificios Públicos, en adelante A.E.P., adjudicó a Las Piedras Construction Corp., en adelante L.P.C., la buena pro para la construcción de la obra pública AEP-8997 consistente en la construcción de una edificación para la escuela superior vocacional Luis Muñoz Rivera en el Municipio de Utuado, en adelante el Municipio, por la suma de $40,000,000.00. A tales efectos, el 23 de abril de 2001 L.P.C. le pagó al Municipio la suma de $1,212,000.00 requerida por concepto de arbitrios de construcción. Dicha suma representaba la totalidad del arbitrio de construcción que el Municipio le había impuesto conforme a la Ordenanza Municipal Número 23 de la Serie 1997-98.[2]

Comenzada la construcción de los cimientos de la obra, la A.E.P. paralizó su construcción y el 14 de julio de 2001 dio por terminado el contrato con L.P.C., en ánimo de reducir el costo de la obra.

Debemos puntualizar, que L.P.C. nunca solicitó el reembolso de los arbitrios de construcción que le pagó al Municipio. De esta forma, el 13 de diciembre de 2001 la A.E.P., como dueña de la obra, le solicitó al Municipio que le extendiera al futuro contratista un crédito por la cantidad monetaria que L.P.C. había pagado en arbitrios de construcción. La A.E.P. no desistió de la ejecución de la

---

[2] Apéndice de la Apelación, págs. 29-35.

obra, tampoco canceló el proyecto, únicamente cambió el contratista general de la obra y modificó el plano original con el propósito de reducir los costos.

Posteriormente, el proyecto de construcción de la escuela superior vocacional Luis Muñoz Rivera, en adelante la escuela, fue llevado nuevamente a subasta pública. Celebrada la subasta, Aireko Construction Corp., en adelante Aireko, recibió la buena pro. El 27 de febrero de 2002, la A.E.P. y Aireko suscribieron un contrato para la construcción de la escuela, esta vez por la cantidad de $28,873,230.00. El proyecto continuó con su número original AEP-8997, utilizó el mismo arquitecto, se construyó de acuerdo a los planos originales, según modificados y en el predio de terreno previamente seleccionado, sito en el barrio Salto Arriba del Municipio de Utuado.

En abril de 2002, el Municipio le requirió a Aireko el pago nuevamente de los arbitrios del proyecto. Aireko efectuó el pago correspondiente a las patentes municipales y le solicitó al Municipio que se le reconociera el pago ya efectuado por concepto de arbitrios de construcción.

Así las cosas, el 31 de marzo de 2003, el Municipio presentó una demanda en cobro de dinero contra la A.E.P. y Aireko reclamando nuevamente el pago de los arbitrios de construcción correspondientes al proyecto para la construcción de la escuela. El Municipio alegó que la

deuda sobre la referida obra ascendía a $1,443,661.50 por concepto de arbitrios de construcción.[3] Además, presentó una solicitud de sentencia declaratoria para que se determinara que el pago del arbitrio en controversia no constituía la imposición de una doble tributación.

Aireko y la A.E.P. comparecieron ante el Tribunal de Primera Instancia y solicitaron la desestimación de la demanda. En resumen, adujeron que los arbitrios de construcción relacionados a la obra que albergaría la escuela ya habían sido satisfechos.

Sopesados los argumentos de las partes, el Tribunal de Primera Instancia declaró no ha lugar la demanda presentada por el Municipio, ello por entender que, "como cuestión de derecho la facultad concedida a los municipios de imponer arbitrios **recae sobre la actividad de construcción**".[4] Es decir, los arbitrios de construcción se

---

[3] El Municipio adujo que la deuda ascendía a la suma total de $1,773,129.45 por concepto de arbitrios de construcción, intereses y recargos. El desglose es el siguiente: $1,443,661.50 por arbitrios de construcción; $185,101.80 por intereses; y $144,366.15 por recargos hasta la fecha en que se radicó la demanda. Estipulaciones de hechos, pág. 3; Apéndice de la Apelación, pág. 106. Cabe señalar que no surge del expediente por qué el Municipio le requirió a Aireko el pago de la suma de $1,443,661.50 por concepto de arbitrios de construcción, mientras que a L.P.C. le había requerido y cobrado $1,212,000.00. De esa forma, el Municipio le requirió a Aireko $231,661.50 más que a L.P.C. por concepto del mismo arbitrio, a pesar de que el costo total del proyecto se redujo en $11,126,770.00.

[4] Sentencia del Tribunal de Primera Instancia, pág. 7; Apéndice del recurso de Apelación, pág. 143. (Énfasis en el original).

imponen sobre la obra y no sobre el contratista que ejecuta la misma. A esos efectos, el foro judicial primario concluyó que la actuación del Municipio no implicaba un esquema de doble tributación, sino que el Municipio pretendía cobrar dos veces el mismo arbitrio de construcción, el cual debía entenderse satisfecho desde que fue pagado por el contratista original que inició la obra.

En desacuerdo con tal determinación, el Municipio acudió ante el Tribunal de Apelaciones. En síntesis, alegó que el Tribunal de Primera Instancia incidió al determinar que la responsabilidad contributiva sobre el pago de arbitrios de construcción recae sobre la obra y no sobre el contratista. El foro apelativo intermedio revocó la sentencia apelada y determinó que el arbitrio de construcción recae sobre el contratista, no sobre la obra. Concluyó que Aireko era responsable de pagar los correspondientes arbitrios.

Inconforme con el dictamen emitido por el Tribunal de Apelaciones, Aireko acude ante nos y hace los siguientes señalamientos de error:

> **Erró el Honorable Tribunal de Apelaciones al determinar que Aireko, como segundo contratista, es responsable de pagar nuevamente los arbitrios de construccion [sic] de una obra que ya habian [sic] sido pagados al [sic] primer contratista y no habian [sic] sido devueltos a este [sic].**
>
> **Erró el Tribunal de Apelaciones al determinar que porque la ley no provee**

**disposiciones expresas sobre la situacion [sic] de autos, Aireko tiene que pagar los arbitrios de construccion [sic] de una obra cuando ya fueron pagados por otro contratista.**

Por su parte, la A.E.P. también recurre ante esta Curia y plantea lo siguiente:

**Incidió y erró el Tribunal de Apelaciones al determinar que un segundo contratista en este caso Aireko, es responsable del pagar nuevamente arbitrios de construcción por una obra donde ya habían sido pagados por otro contratista, por que [sic] los arbitrios se imponen en función del contratista y no de la obra.**

**Incidió y erró el Tribunal de Instancia al concluir, contrario a las circunstancias particulares del caso, los hechos estipulados y el derecho aplicable, que por que [sic] la ley no lo prohíbe expresamente el municipio puede cobrar dos veces un mismo arbitrio de construcción.**

**Incidió y erró el Tribunal de Apelaciones al determinar que un segundo contratista de una obra, en un municipio que genera una ordenanza que no provee para situaciones donde sin que se desista de llevar a cabo la obra se sustituya la persona del contratista, se tenga que pagar nuevamente arbitrios que ya fueron pagados por el primer contratista.**

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

II

Entendemos que en este caso, no hay controversia en cuanto a que la obra que comenzó a construir L.P.C. y sobre la que pagó los arbitrios de construcción, es la misma obra que construyó Aireko. La controversia que resta

por resolver es si Aireko, como segunda contratista, está obligada a pagar de nuevo, los arbitrios de construcción sobre la mencionada obra. Consecuentemente, y como cuestión de umbral, debemos resolver si los arbitrios de construcción que imponen los municipios por la construcción de obras dentro de los límites territoriales de su municipalidad, al amparo del Artículo 2.002 (d) de la Ley de Municipios Autónomos,[5] recaen sobre el contratista o sobre la obra a ser construida. Veamos.

La Ley de Municipios Autónomos, *supra*, fue aprobada por la Asamblea Legislativa para otorgarle a los municipios un mayor grado de gobierno propio y autonomía fiscal. Posteriormente, esta ley fue enmendada con el propósito de que los municipios ampliaran sus facultades contributivas y pudieran recaudar mayores ingresos para sufragar los servicios que ofrecen a sus habitantes.[6] Estos poderes delegados debían ejercerse de manera compatible con la tributación impuesta por el Estado.[7]

Cónsono con ello, este Tribunal ha expresado que los impuestos municipales responden a la premisa de que los negocios sitos en un municipio se benefician de la

---

[5] Ley Núm. 81 del 31 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 4001 *et seq.* 21 L.P.R.A. sec. 4052 (d).

[6] La Ley de Municipios Autónomos, *supra*, fue enmendada a estos efectos por la Ley Núm. 199 de 6 de septiembre de 1996 y por la Ley Núm. 130 de 7 de septiembre de 2004.

[7] Café Rico, Inc. v. Mun. de Mayagüez, 155 D.P.R. 548, 553 (2001).

organización local para efectuar sus actividades de interés pecuniario y, por tal razón, deben contribuir al sostenimiento del mismo.[8]    A tales efectos, el Artículo 2.002 (d) de la Ley de Municipios Autónomos, *supra*, faculta a los municipios a imponer mediante ordenanza municipal, ciertas contribuciones, tasas y tarifas.    Entre éstas, se encuentra el arbitrio de construcción, cuyo pago podrá ser requerido por los municipios antes del comienzo de toda obra que se construya dentro de sus límites territoriales.    Para fijar este arbitrio se tomará en consideración el costo total del proyecto, luego de restarle los gastos por concepto de ciertas partidas predeterminadas.

En lo atinente al caso de autos, el Artículo 2.002 (d), *supra*, dispone lo siguiente en cuanto a las facultades de los municipios:

> (d)    **Imponer y cobrar** contribuciones, derechos, licencias, **arbitrios de construcción** y otros arbitrios e impuestos, tasas y tarifas razonables **dentro de los límites territoriales del municipio**, compatibles con el Código de Rentas Internas y las Leyes del Estado Libre Asociado de Puerto Rico, incluyendo sin que se entienda como una limitación, por el estacionamiento en vías públicas municipales, por la apertura de establecimientos comerciales, industriales y de servicios, **por la construcción de obras** y el derribo de edificios, por la ocupación, el uso y la intervención de vías públicas y servidumbres municipales y por el manejo de desperdicios. (Énfasis nuestro).

---

[8] Banco Popular v. Mun. De Mayagüez, 120 D.P.R. 692, 700 (1988).

El Artículo 1.003 de la Ley de Municipios Autónomos,[9] *supra*, en lo pertinente, define "arbitrio de construcción", "actividad de construcción" y "contribuyente" como se expresa a continuación:

(cc) **Arbitrio de Construcción. Significará aquella contribución impuesta por los municipios** a través de una ordenanza municipal aprobada con dos terceras (2/3) partes para ese fin, **la cual recae sobre el derecho de llevar a cabo una actividad de construcción y/o una obra de construcción dentro de los límites territoriales del municipio**…. (Énfasis nuestro).

(dd) **Actividad de Construcción. Significará el acto o actividad de construir,** reconstruir, alterar, ampliar, reparar, demoler, remover, trasladar **o relocalizar cualquier edificación, obra, estructura: casa o construcción de similar naturaleza fija y permanente, pública o privada, realizada dentro de los límites territoriales de un municipio,** y para la cual se requiera o no un permiso de construcción expedido por la Administración de Reglamentos y Permisos o por un municipio autónomo…. (Énfasis nuestro).

(ee) Contribuyente. Significará aquella persona natural o jurídica obligada al pago del arbitrio sobre la actividad de la construcción cuando:
(1) Sea dueño de la obra y personalmente ejecute las labores de administración y las labores físicas e intelectuales inherentes a la actividad de construcción;
(2) sea contratada para que realice las labores descritas en a cláusula (1) anterior, para beneficio del dueño de la obra, sea éste una persona particular o entidad gubernamental. El arbitrio podrá formar parte del costo de la obra.

En relación a los arbitrios de construcción, el Artículo 2.002, *supra*, establece:

---

[9]  21 L.P.R.A. sec. 4001.

**Toda obra de construcción** [que se construya] dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad [sic] del Gobierno Central o municipal o del gobierno federal, incluyendo aquella obra que no requiera la solicitud o expedición de un permiso por la Administración de Reglamentos y Permisos o por un municipio autónomo, **deberá pagar [el] arbitrio de construcción correspondiente, previo al comienzo de dicha obra.**

**En estos casos, se pagarán dichos arbitrios al municipio donde se lleve a cabo dicha obra previo a la fecha de su comienzo.** En aquellos casos donde surja una orden de cambio en la cual se autorice alguna variación al proyecto inicial, se verificará si dicho cambio constituye una ampliación y de así serlo se computará el arbitrio que corresponda.

**Tanto la Administración de Reglamentos y Permisos como la Oficina de Permisos Municipal, en el caso de municipios autónomos, no podrán otorgar permisos de construcción a ninguna obra a ser realizada en un municipio que no cumpla con los requisitos impuestos en esta sección. A tales fines, todo contratista deberá presentar una certificación emitida por el municipio como evidencia de haber pagado los arbitrios de construcción correspondientes.** …

**Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el costo en que se incurra para realizar el proyecto luego de deducirle el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales.** (Énfasis nuestro).

Finalmente, es menester señalar que cuando un contribuyente haya pagado el arbitrio de construcción correspondiente y posteriormente, no comienza la actividad

de construcción o no termina la misma, podrá solicitar el reintegro de la suma pagada. La cantidad reembolsada dependerá de si el contribuyente hubiere comenzado o no la construcción de la obra. A tales efectos, el Artículo 2.007 (e) de la Ley de Municipios Autónomos,[10] dispone:

> Cuando un contribuyente haya efectuado el pago del arbitrio aquí dispuesto y con posterioridad a esta fecha, el dueño de la obra de construcción de aquélla, sin que se haya, en efecto, comenzando la actividad de construcción, el contribuyente llenará una Solicitud de Reintegro del Arbitrio y éste procederá en su totalidad. Si la obra hubiere comenzado y hubiere ocurrido cualquier actividad de construcción, el reintegro se limitará al cincuenta por ciento (50%). El reintegro se efectuará dentro de los treinta (30) días siguientes a la fecha en que se presente con el Director de Finanzas la solicitud de reintegro. No habrá lugar para solicitar reintegro de suma alguna luego de transcurridos seis (6) meses después de la fecha en que se expidió el recibo de pago del arbitrio determinado para una obra en particular.

### III

Como hemos visto, la Ley de Municipios Autónomos, *supra*, autoriza a los municipios a imponer y cobrar contribuciones e impuestos razonables dentro de sus límites territoriales y expresamente permite el cobro de arbitrios sobre actividades de construcción. Esta ley establece los procedimientos que los municipios deben seguir para la imposición de este arbitrio, así como las reclamaciones, reintegros y sanciones correspondientes.

---

[10] 21 L.P.R.A. sec. 4057.

Consta en autos que en virtud de la referida autorización, el Municipio emitió la Ordenanza Número 23, *supra*, la que autoriza la imposición y el cobro de arbitrios de construcción sobre toda actividad de construcción que se realice dentro del Municipio. Dicho arbitrio se impondrá sobre la construcción de edificios o estructuras, obras, excavaciones, servidumbres u otros análogos, así como las mejoras y ampliaciones de éstos.

A su vez, la Ordenanza Número 23, *supra*, dispone que "[e]l dueño de la obra o el contratista a cargo de la obra deberá solicitar del Municipio un permiso de construcción previo al comienzo de la obra para cuya obtención tendrá que pagar el arbitrio [de construcción]".[11]  Al igual que la Ley de Municipios Autónomos, *supra*, la referida Ordenanza en su Sección 16,[12] dispone que cuando se haya satisfecho el pago del referido arbitrio y posteriormente el dueño de la obra desiste de llevar a cabo la actividad de construcción, procederá el reintegro de lo pagado. Este reintegro tiene que ser solicitado dentro de los seis (6) meses contados a partir de la fecha en que se expidió el recibo de pago del arbitrio. No obstante, dicha Ordenanza nada dispone sobre los casos en que el dueño de la obra continúa la

---

[11] Apéndice de la Apelación, pág. 30.

[12] Id, pág. 33.

realización del proyecto, pero con un contratista distinto al original.

IV

A tenor con la normativa antes descrita, atenderemos la presente controversia. En este caso, el Tribunal de Apelaciones revocó al foro primario y decidió que el arbitrio de construcción que imponen los municipios por la construcción de obras dentro de sus límites territoriales recae sobre el contratista, no sobre la obra. Expresó, además, que Aireko era responsable por el pago de los arbitrios correspondientes a la actividad de construcción "de la cual se verá exclusivamente beneficiado".[13] A tales efectos, le ordenó a Aireko que le pagara al Municipio el impuesto correspondiente por la construcción de la escuela. Entendemos que erró al así actuar.

En sus recursos, Aireko y la A.E.P. aducen que los arbitrios de construcción fueron pagados por el primer contratista y, por tanto, Aireko no está obligada a pagarlos nuevamente. Por otro lado, la A.E.P. alega que los arbitrios de construcción recaen sobre la obra y no sobre el contratista. Además, sostiene que los arbitrios deben entenderse pagados porque ésta, como dueña de la obra, pagó los arbitrios de construcción a través de L.P.C. Asimismo, señala que el arbitrio de construcción

---

[13] Resolución del Tribunal de Apelaciones, pág. 13, Apéndice de la Apelación, pág. 173.

es un costo que pagó como dueña de la obra, toda vez que entre los costos del proyecto se encontraba una partida de gastos por certificaciones que incluía los arbitrios de construcción.

Por su parte, el Municipio arguye que la responsabilidad contributiva recae de forma individual sobre el contratista y no sobre la obra y, por ende, Aireko como segunda contratista, no puede solicitar ni obtener un crédito por lo pagado por L.P.C. Sin embargo, las alegaciones del Municipio no están sostenidas por la Ley de Municipios Autónomos, *supra*, debido a que dicha ley no provee disposiciones sobre el proceso a seguir en casos como el que aquí nos ocupa. Es decir, nuestra Legislatura no se ha expresado sobre las situaciones en que, luego de comenzada la construcción de la obra y sin que se desista de realizar la misma, se sustituye la persona del contratista general.

No podemos avalar la interpretación que el Municipio pretende darle a la Ley de Municipios Autónomos, *supra*. Hemos resuelto anteriormente que una sección de un estatuto no puede ser interpretada de forma aislada. Es necesario interpretar un estatuto en su totalidad, armonizando el significado de sus distintas partes e implementando la intención de la Asamblea Legislativa. La determinación que un tribunal haga debe asegurar el

resultado que el legislador quiso obtener al crear la ley.[14]

La Ley de Municipios Autónomos, *supra*, le confiere a los municipios la autoridad para imponer arbitrios de construcción. Estos arbitrios deben ser pagados al inicio de la obra y se fijan de acuerdo al costo del proyecto, sin importar cuántos contratistas construyan el mismo. Ahora bien, la mencionada ley no establece si los arbitrios se pagarán cada vez que se inicie una obra o cada vez que un contratista comience a trabajar en la obra, independientemente de si la misma ya está comenzada por un contratista diferente. La mencionada ley tampoco establece si los municipios pueden cobrar el mismo arbitrio de construcción sobre una obra en más de una ocasión.

La intención legislativa al aprobar y enmendar la Ley de Municipios Autónomos, *supra*, fue de ampliar las facultades contributivas de los municipios. No obstante, no se autorizó a los municipios como parte de los poderes delegados por la Legislatura a cobrar, varias veces, el impuesto de construcción sobre una misma obra.

Nos parece irrazonable y demasiado oneroso que luego de comenzada la construcción de una obra, cuando el dueño decide continuar el proyecto con otro contratista, que los

---

[14] Méndez *et al.* v. Alcalde de Aguadilla, 151 D.P.R. 853, 858-859 (2000).

municipios puedan cobrar los arbitrios de construcción más de una vez.

Al interpretar el Artículo 2.002, *supra*, en conjunto con el Artículo 1.003, *supra*, y las demás secciones pertinentes del mismo estatuto, es forzoso concluir que la delegación del poder de imponer arbitrios de construcción no tenía el propósito legislativo que alega el Municipio.

El Artículo 2.002, *supra*, establece que "[t]oda **obra de construcción** […] deberá pagar [el] arbitrio de construcción correspondiente, previo al comienzo de dicha obra". (Énfasis nuestro). La Ley de Municipios Autónomos, *supra*, dispone claramente que los arbitrios de construcción recaen sobre la **obra**.

Por otra parte, el Artículo 1.003, *supra*, establece que el arbitrio de construcción "recae sobre el **derecho** a llevar a cabo una actividad u obra de construcción dentro de los límites territoriales del municipio". (Énfasis nuestro). Como puede observarse, ambas disposiciones aparentan estar en conflicto. No obstante, debemos puntualizar que el Artículo 2.002, *supra*, es el que establece las facultades que tienen los municipios para imponer contribuciones, tasas, tarifas y otras. Mientras que el Artículo 1.003, *supra*, es uno introductorio. Concluimos que el arbitrio de construcción recae sobre la **obra**.

Ciertamente, el contratista es el responsable de pagar el arbitrio de construcción, para poder comenzar la construcción, pero es la obra la que **genera** la obligación de efectuar el pago. El Artículo 2.002, *supra*, establece que para obtener un permiso de construcción por parte de la Administración de Reglamentos y Permisos y de la Oficina de Permisos Municipal, todo contratista deberá presentar una certificación emitida por el municipio como evidencia de haber pagado los arbitrios de construcción correspondientes. El contratista paga el arbitrio de construcción, pero dicha suma proviene del dueño de la obra.

Cónsono con lo anterior, si la actividad económica que genera la obligación del pago, en este caso la construcción de la escuela, continúa, pero se cambia el contratista que la construye, no procede la imposición otra vez del pago por concepto de arbitrios de construcción sobre la misma obra.

L.P.C., como primer contratista, pagó los arbitrios de construcción correspondientes a la escuela y comenzó su construcción. Posteriormente, la A.E.P., como dueña de la obra, canceló el contrato con L.P.C. y decidió continuar la construcción con otro contratista. A esos efectos, la A.E.P. le solicitó al Municipio que le reconociera al nuevo contratista el pago de los arbitrios de construcción efectuado por L.P.C. No obstante, el Municipio se negó,

por entender que el arbitrio de construcción recae sobre el contratista y no sobre la obra.

Debemos puntualizar que surge de las estipulaciones de hechos suscritas por las partes, que "[c]onforme a los planos originales y los planos que fueron posteriormente modificados por la firma del Arquitecto [sic] Eduardo Molinari, la obra para la construcción de la escuela Superior [sic] de Utuado constituye en términos de arquitectura y construcción una misma obra".[15]

A tenor con lo expresado, el arbitrio de construcción recae sobre la obra. Por ello, es irrelevante si la obra fue construida en su totalidad por un contratista, o si por el contrario, el dueño decidió finalizar la misma luego de cambiar de contratista en una o más ocasiones. Aplicado tal principio, resulta inmaterial si los arbitrios de construcción fueron pagados por L.P.C., Aireko o por la A.E.P., como dueña de la obra. En el caso de epígrafe, hubo una sola obra de la que L.P.C. pagó los arbitrios correspondientes y nunca solicitó el reintegro de los mismos. Por tanto, el Municipio actúa de manera *ultra vires* al imponer una doble tributación basada en el cambio del contratista. El arbitrio de construcción no tiene que ser pagado otra vez. Recordemos que la Asamblea Legislativa tiene el poder exclusivo de imponer y cobrar

---

[15] Estipulaciones de hechos, pág. 3; Apéndice de la Apelación, pág. 106.

contribuciones  y autorizar su imposición y cobro por los municipios.[16] Los municipios no tienen un poder inherente, independiente del Estado, para imponer contribuciones.

En resumen, los arbitrios de construcción que imponen los municipios al amparo del Artículo 2.002 (d) de la Ley de Municipios Autónomos, *supra*, se imponen sobre la **obra** a construirse dentro de la demarcación territorial del municipio, no al contratista y, por tanto, el mero cambio de contratista no requiere la imposición de otro arbitrio de construcción sobre la misma obra.

V

Por los fundamentos expuestos revocamos la sentencia recurrida emitida por el Tribunal de Apelaciones.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo.

Efraín E. Rivera Pérez
Juez Asociado

---

[16] Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art. VI, sec. 2.